IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAJOHNAE A. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PETE BUTTIGIEG, Secretary, United ) | Case No. CIV-20-1161-PRW |
| States Department of Transportation, ) | |
| Federal Aviation Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 40). The matter is fully briefed, and for the reasons discussed below, the Motion is **GRANTED**.

*Background*[1]

In February 2016, Plaintiff Tajohnae Miller, an African American female, began working as an Air Traffic Controller Specialist ("ATCS") trainee at the FAA Training Academy, Mike Monroney Aeronautical Center, Oklahoma City, Oklahoma. Over the next months, Ms. Miller and a class of seventeen other trainees participated in ATCS instruction and examination. Madeline Bostic, a white female, was one of Ms. Miller's classmates.

Both Ms. Miller and Ms. Bostic performed well in the classroom instruction and written examination portions of the program. However, in the simulator-based performance

---

[1] The below factual recitation is taken from the statements of material facts in the parties' briefs.

1

assessments—which account for the bulk of a student's total score for the program—both women had assessment runs that fell below expectations. After their performance assessments, both women used the Technical Review process to note perceived technical and procedural errors that they felt contributed to their low scores. Upon review by instructors, no system errors were noted, and no lost points were restored.

After completion of the performance assessments, FAA Academy instructors totaled up the ATCS trainee scores. Ms. Miller and Ms. Bostic both fell short of the required seventy points needed to pass the program. On May 10, 2016, both Ms. Miller and Ms. Bostic were dismissed from ATCS training for failing to achieve a passing grade.

On May 13, 2016, Ms. Bostic contacted an Equal Employment Opportunity ("EEO") counselor, claiming that she had suffered harassment during ATCS training on the basis of her sexual orientation. Ms. Bostic claimed that the harassment had negatively affected her performance in the simulated runs, leading to her failing grade. Richard Mitchell, a white male, was a manager at the FAA Academy. After reviewing Ms. Bostic's EEO complaint, Mr. Mitchell agreed to participate in an Alternative Dispute Resolution ("ADR") process. That process led to a settlement whereby Ms. Bostic would be reinstated to the Academy and given another chance to participate in and pass the ATCS training program.

Word of Ms. Bostic's reinstatement soon got around to her former classmates. Perhaps uncomfortable sharing the real circumstances of her reinstatement, Ms. Bostic may have given a cover story. In any case, when Ms. Miller heard of the reinstatement through

another friend and classmate, she was led to believe that Ms. Bostic had been reinstated as a result of "computer glitches" during her simulator runs.

Believing that she, too, had been a victim of technical difficulties, Ms. Miller reached out to FAA Academy personnel to inquire about the possibility of reinstatement. On August 6, 2016, the same day she learned of Ms. Bostic's reinstatement, Ms. Miller emailed Ron Ward, her former first-line supervisor at the FAA Academy. Ms. Miller explained the situation as she understood it, and asked if reinstatement was a possibility. Receiving no response, Ms. Miller sent a follow-up email and contacted the FAA Hotline on August 25, 2016. An FAA Hotline representative acknowledged the inquiry and told Ms. Miller that someone from the Air Traffic Organization would respond to her directly in about a week. On September 21, 2016, having still received no response to her request, Ms. Miller contacted an EEO counselor to begin the process of an EEO complaint.

In her EEO complaint, Ms. Miller alleged that she was discriminated against on the basis of race.[2] In the intervening months, while working with the EEO counselor, Ms. Miller was informed that the FAA Academy would not offer reinstatement and would not agree to adjudicate her request through ADR. The complaint identified both decisions as discriminatory actions, and listed August 6, 2016, as the date of those actions. After an investigation, the Equal Employment Opportunity Commission ultimately concluded that Ms. Miller's complaint was untimely and failed to state a claim.

---

[2] Ms. Miller initially alleged discrimination on the basis of color as well, but later dropped that allegation.

Ms. Miller filed her present Complaint (Dkt. 1) on September 23, 2020, alleging discrimination on the basis of race in violation of Title VII. After a period of discovery, Defendant filed the present Motion for Summary Judgment (Dkt. 40) on January 3, 2022.

### *Legal Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine dispute exists if a reasonable juror could return a verdict for either party.[4] A fact is material if it "might affect the outcome of the suit under the governing law."[5] In considering a motion for summary judgment, a court must view all facts and reasonable inferences in the light most favorable to the nonmovant.[6] Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

### *Analysis*

Defendant raises two possible grounds for summary judgment. First: that Ms. Miller failed to comply with the timing requirements for her EEO complaint, and therefore failed to properly exhaust her administrative remedies. Second: that Ms. Miller cannot show that

---

[3] Fed. R. Civ. P. 56(a).

[4] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Id.*

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

the FAA Academy's decisions were made with discriminatory intent. The Court addresses each in turn.

I.  **Administrative Exhaustion**

Employment discrimination actions under Title VII are subject to "rigorous administrative exhaustion requirements and time limitations."[8] "Before a federal civil servant can sue h[er] employer for violating Title VII, [s]he must, among other things, 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days of the date of the matter alleged to be discriminatory.'"[9] The standard rule is that the 45-day limitations period "commences when the plaintiff has a complete and present cause of action."[10] Claims generally accrue "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis" of the action.[11] In an employment discrimination case, the start of the limitations period thus depends on the circumstances and the kind of discriminatory action alleged.[12]

Defendant argues that the limitations period began on August 6, 2016, the date that Ms. Miller learned of Ms. Bostic's reinstatement, and the date that Ms. Miller first inquired

---

[8] *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976); *see James v. McHugh*, 566 F. App'x 623 (10th Cir. 2014) (unpublished).

[9] *Green v. Brennan*, 578 U.S. 547, 549–50 (2016) (quoting 29 CFR § 1614.105(a)(1)).

[10] *Id.* at 554 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418 (2005)).

[11] *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).

[12] *Green*, 578 U.S. at 553–54, 564 ("The limitations-period analysis is always conducted claim by claim."); *see also Del. State College v. Ricks*, 449 U.S. 250, 257 (1980)

about her own reinstatement. Indeed, Defendant's position is that Ms. Miller herself repeatedly confirmed that August 6 was the relevant date. In her Department of Transportation complaint form, Ms. Miller listed August 6 in large bold letters as the date of discriminatory action.[13] Ms. Miller did not object when that date was used in the statement of the claim turned over to an EEO investigator.[14] Ms. Miller repeated that August 6 was the date of the discriminatory action in her sworn statement to the EEO investigator,[15] and the date was carried over into the statement of the claim in the final EEO decision.[16] It is undisputed that Ms. Miller first contacted an EEO counselor on September 21, 2016, forty-six days from August 6, 2016. Defendant therefore concludes that Ms. Miller failed to properly exhaust her administrative remedies.

Ms. Miller does not contest the fact that August 6, 2016, appears throughout the EEO documentation as Defendant suggests. However, according to her, that date was in error. She argues that, logically speaking, it must be. On August 6, 2016, Ms. Miller was operating under the belief that Ms. Bostic had been reinstated due to computer issues during her performance assessments. For all Ms. Miller knew, her request for reinstatement along similar lines would promptly result in similar results. It was only after FAA failed to respond to her inquiries that Ms. Miller had any reason to suspect that she was being treated

---

("Determining the timeliness of Ricks' EEOC complaint . . . requires us to identify precisely the 'unlawful employment practice' of which he complains.").

[13] Ex. 13 (Dkt. 40-13), at 9.

[14] Ex. 1 (Dkt. 51-1).

[15] Miller Aff. (Dkt. 40-9), at 1.

[16] Ex. 2 (Dkt. 51-2), at 3.

differently, and it was only when FAA finally decided to not reinstate her and to not participate in ADR that she was in fact treated differently. Ms. Miller argues that whatever the exact date her discrimination claims accrued, it was after August 6, 2016, and therefore her consultation with the EEO counselor was timely.

Looking to the claims at issue, the Court finds that Ms. Miller has the better of the argument. The alleged discriminatory actions here are FAA's refusal to reinstate Ms. Miller or to engage in the ADR process. After submitting her inquiry on August 6, and for several weeks thereafter, Ms. Miller had no insight into the status of her request. From emails produced in discovery, it appears that FAA Academy personnel did not begin discussing Ms. Miller's request until August 8, 2016, at the earliest.[17] It is safe to say that the "matter[s] alleged to be discriminatory" in this case must have occurred after that date, and therefore within forty-five days of Ms. Miller's consultation with the EEO counselor on September 21, 2016. The Court finds no administrative exhaustion problem here.[18]

## II. Title VII

Title VII of the Civil Rights Act of 1964 prohibits racial discrimination in employment decisions.[19] Where a plaintiff relies on circumstantial evidence of

---

[17] Exs. 5–8 (Dkt. 47-5–47-8).

[18] The parties also discuss the possible application of the doctrine of equitable tolling to this case, which could serve to effectively extend the applicable limitations period. Because the Court concludes that Ms. Miller's contact with the EEO counselor was within the limitations period, it does not address these arguments.

[19] 42 U.S.C. § 2000e–2(a)(1).

discrimination, the familiar tripartite framework of *McDonnell Douglas Corp. v. Green*[20] governs.[21] The burden starts with plaintiff, who must present a prima facie case of discrimination.[22] If that hurdle is cleared, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the disputed action.[23] If such a reason is provided, the burden shifts back to the plaintiff to demonstrate that the given reason is pretextual[24]—that is, that the proffered reasons are so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief."[25]

Generally stated, a prima facie case of race-based discrimination is established through evidence that: (1) the employee belongs to a protected class; (2) the employee suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination.[26] The burden to establish a prima facie case is not onerous.[27] Nevertheless, the prima facie case requirement "serves an important function in the

---

[20] 411 U.S. 792 (1973).

[21] *See, e.g., Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Bekkem v. Wilkie*, 915 F.3d 1258, 1268 (10th Cir. 2019) (quoting *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

[26] *Ibrahim*, 994 F.3d at 1196.

[27] *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

litigation: it eliminates the most common nondiscriminatory reasons for the [adverse employment action]."[28]

The first two prima facie case elements are undisputed here. As to the third element, Defendant argues that the circumstances here do not give rise to an inference of discrimination. The basis of Ms. Miller's claim is a disparity in the treatment that she received compared to Ms. Bostic. Defendant notes that such comparisons must be "legally relevant."[29] That is, the employees must be "similarly situated in *all material respects*."[30] Defendant argues that Ms. Bostic and Ms. Miller were not similarly situated in all material respects, in that they presented very different reasons for seeking reinstatement to the FAA Academy.

Ms. Miller disagrees. She notes that they were in the same FAA Academy class, sharing the same lead instructor and supervisors. Both women scored poorly on performance assessment runs on the same day, and both used the Technical Review process to flag what they believed were computer errors during the assessments. After those complaints were adjudicated and no points were restored, both women were dismissed from the program for failing to meet the scoring threshold. Added together, Ms. Miller

---

[28] *Id.*

[29] *Hysten v. Burlington N. & Santa Fe. Ry. Co.*, 296 F.3d 1177, 1182–83 (10th Cir. 2002).

[30] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1218 (10th Cir. 2011); *see Morman v. Campbell Cnty. Mem. Hosp.*, 632 F. App'x 927, 935 (10th Cir. 2015) (unpublished) (applying the "all material respects" standard in the *McDonnell Douglas* context).

argues, these conjoined circumstances show that Ms. Bostic and herself were similarly situated.[31]

As for Defendant's argument that the similarities end at the nature of the two women's reinstatement requests, Ms. Miller responds that the difference is undercut by what she perceives as irregularities in the FAA Academy's investigation of Ms. Bostic's request. Ms. Miller also relies on records showing three other white FAA Academy trainees who were granted reinstatement, and three other black trainees who were denied reinstatement. She argues that these other cases raise an inference of discrimination.

The Court finds that Ms. Miller has failed to establish a prima facie case of racial discrimination. The Court recognizes the many similarities between Ms. Miller and Ms. Bostic's situations leading up to their dismissal from the training program. But Ms. Miller's claims of discrimination both center around reinstatement, and it is on that point—the most material point—that the two women differ. Ms. Bostic approached the FAA Academy in the course of an EEO complaint alleging that sexual orientation discrimination had interfered with her performance. Ms. Miller sent an email asserting that there was "a glitch in the system"[32] during her performance assessments. Such issues are handled by the Technical Review process, which Ms. Miller in fact participated in after her simulator runs. These facts are not disputed by the parties, and no favorable inference drawn in favor of

---

[31] *See Ibrahim*, 994 F.3d at 1196 ("Employees are similarly situated when they share a supervisor or decision-maker, must follow the same standard, and engage in comparable conduct.").

[32] Ex. 6 (Dkt. 47-6).

Ms. Miller can close the gap between their given reasons for requesting reinstatement. Ms. Miller and Ms. Bostic were not similarly situated in this critical respect.

As Ms. Miller notes, differential treatment or apparent favoritism can create an inference of discrimination.[33] The strength of that inference, or whether an inference can be drawn at all, depends once more on the similarity between the compared employees. For two employees who are *identically* situated, any unexplained difference in outcome can open the door to an inference of discrimination.[34] As the employee circumstances differ in greater degrees, discrimination becomes harder to infer from mere disparities of result.[35] Something more, such as procedural irregularities or apparent bad faith, is then needed to bolster the inferential step.[36] Ms. Miller expends a great deal of effort probing the thoroughness of FAA Academy's consideration of Ms. Bostic's claims.[37] What Ms. Miller ultimately arrives at, however, is mere conjecture that the decision to reinstate Ms. Bostic was improperly motivated.[38] Given the material difference between the two women's

---

[33] *See Ibrahim*, 994 F.3d at 1196–97.

[34] *See id.*

[35] *See Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1192–95 (10th Cir. 2010).

[36] The Tenth Circuit has recognized that there is some overlap between this kind of prima facie case inquiry and the pretext analysis performed at the third step of *McDonnell Douglas*. *Id.* at 1191 n.5 ("As this [not similarly situated] contention turns on the reasons given for reinstating the comparators and refusing to reinstate Medlock, it goes to the justification-versus-pretext inquiry as much as to the prima facie case.").

[37] *See* Pl.'s Resp. (Dkt. 48), at 25–30.

[38] In addition, Ms. Miller's primary theory of the improper motive isn't racial favoritism, but nepotism. *See Medlock*, 608 F.3d at 1195 ("To conclude somehow from this that Popejoy was reinstated for reasons that cast doubt on the justification for not reinstating Medlock would be sheer conjecture, which we have long recognized is an inadequate basis

11

situations, that is not enough to "eliminate the most common nondiscriminatory reason[]" for the disparate outcomes.[39] "[I]n prima facie case terms, the comparison does not give rise to a reasonable inference of [racial] discrimination."[40]

The other reinstatement decisions Ms. Miller references are equally unavailing. The three white trainees who were reinstated were all members of the same class whose instruction was repeatedly disrupted by an unruly classmate.[41] The three black trainees who were not reinstated pursued EEO complaints alleging various forms of racial discrimination.[42] Two of those complaints went to ADR mediation but failed to settle for undisclosed reasons.[43] In any event, none of the six trainees is a good comparator for Ms. Miller, nor do they raise or bolster any inference of discrimination in the FAA Academy's decision not to reinstate her.

Again, the Court finds that Ms. Miller has failed to establish a prima facie case of discrimination. For the same reasons, the Court concludes that Ms. Miller has failed to demonstrate that FAA Academy's given reasons for agreeing to ADR mediation and reinstating Ms. Bostic, while denying the same for Ms. Miller, were pretextual—*i.e.*, so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude

---

on which to oppose summary judgment." (citing *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008))).

[39] *Plotke*, 405 F.3d at 1099.

[40] *Medlock*, 608 F.3d at 1194; *see also Hysten*, 296 F.3d at 1182–83.

[41] Exs. 2–4 (Dkt. 48-2–48-4).

[42] Exs. 6–8 (Dkt. 48-6–48-8).

[43] Exs. 7, 8 (Dkt. 48-7, 48-8).

the reasons were unworthy of belief."[44] Thus, even assuming *arguendo* that Ms. Miller has a prima facie case of discrimination, her claim nevertheless falls short at the third step of *McDonnell Douglas*. The Court finds that there is no genuine dispute of material fact, and that Defendant is entitled to judgment as a matter of law.

## *Conclusion*

For the reasons discussed above, Defendant's Motion for Summary Judgment (Dkt. 40) is **GRANTED**. A separate judgment will be entered in favor Defendant and against Ms. Miller.

**IT IS SO ORDERED** this 8th day of May 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[44] *Bekkem*, 915 F.3d at 1268.